UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN S. TURNER,

        Petitioner,

v.     CASE NO. 04-CV-73821-DT
        HONORABLE BERNARD A. FRIEDMAN

HUGH WOLFENBARGER,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Steven S. Turner has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state convictions for first-degree murder and assault with intent to commit murder. Having reviewed the pleadings and state court record, the Court concludes that Petitioner's claims do not warrant granting the writ of habeas petition. Accordingly, the application for the writ of habeas corpus will be DENIED.

### I. Background

Petitioner was charged in Jackson County, Michigan with open murder and assault with intent to commit murder. The charges arose from the stabbing of Martin Bates and his wife Rhonda Bates. As explained by the Michigan Court of Appeals,

> [Petitioner] admitted [at trial] that he used a knife to break into the Bates' second-story apartment, where they had recently moved. [Petitioner] contended he thought the home was vacant and simply needed a place to stay for the night. Two of the three minor children also inside the apartment saw the intruder, and one of them, Tabitha (sic) Bates, identified him as [Petitioner.] [Petitioner] contended that when the victim, Martin Bates, confronted him with a gun, [he] became scared and reached for the gun, believing that Martin would shoot him. [Petitioner] claimed that during the struggle, he must have unintentionally stabbed

>Martin and his wife Rhonda Bates, who joined the fight. [Petitioner] stated that he was only trying to get out of the apartment. Rhonda eventually ran for help and Tabitha (sic) saw her father bleed to death. Soon after, Rhonda realized she was bleeding profusely from being stabbed multiple times all over her body. Martin died from a single stab wound to his thigh, which severed his femoral artery and vein.

*People v. Turner*, No. 229934, at 1, 2002 WL 31956937, at *1 (Mich. Ct. App. Dec. 20, 2002) (unpublished opinion).

Petitioner's defense was that, at most, he was guilty of manslaughter and felonious assault. The jurors disagreed, and on June 28, 2000, they found Petitioner guilty of first-degree (felony) murder, Mich. Comp. Laws § 750.316, and assault with intent to commit murder, Mich. Comp. Laws § 750.83.

The trial court sentenced Petitioner as a fourth felony offender to concurrent terms of life imprisonment. Petitioner raised his habeas claims in the Michigan Court of Appeals, which remanded the case so that Petitioner could file a motion for new trial on the basis of his claims about trial counsel. The trial court held an evidentiary hearing and then denied Petitioner's motion for new trial. The Michigan Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished decision, *see id.*, and on August 29, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Turner*, 469 Mich. 874; 668 N.W.2d 908 (2003) (table).

Petitioner filed a motion for relief from judgment in 2004. The trial court denied his motion on the ground that the Michigan Court of Appeals had already considered and rejected his claims. Petitioner did not appeal the trial court's decision, and on October 6, 2004, he filed his habeas corpus petition. The grounds for relief are: (1) the *Miranda*[1] warnings were

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

inadequate and defense counsel was ineffective for failing to move to suppress Petitioner's statement to the police; (2) the trial court violated Petitioner's right to confront witnesses and erroneously admitted Zachary Bates' statements about the crime through a police officer's testimony; and (3) the criminal information was improperly amended to include a charge of felony murder, and defense counsel was ineffective for failing to object to the amendment. Respondent argues through counsel that: (1) the state court's decision on Petitioner's first claim was not an unreasonable application of any Supreme Court decision; (2) the hearsay claim is procedurally defaulted and Petitioner's confrontation rights were not violated by the admission of an excited utterance; and (3) the third claim lacks merit because open murder includes felony murder, the prosecutor presented sufficient evidence at the preliminary examination, and Petitioner has not shown any prejudice.

## II. Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

3

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

#### A. The *Miranda* claim

The first habeas claim alleges that the constitutional warnings read to Petitioner before he made a statement to the police were inadequate. According to Petitioner, no one informed him that he was entitled to the assistance of counsel before and while two detectives interrogated him. Petitioner further alleges that his trial attorney was ineffective for failing to move to suppress his statement to the detectives on that ground.

An attorney is ineffective if the attorney's performance is deficient and the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 1984). When a *Miranda* claim lacks merit, an attorney's failure to raise the issue in no way supports an

ineffective assistance claim. *United States v. May,* 565 F.2d 881, 888 (5th Cir. 1978). To determine whether defense counsel was ineffective, the Court must first look at Petitioner's underlying Fifth Amendment claim.

The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself . . . ." U. S. CONST. amend. V. To protect a suspect's Fifth Amendment right to remain silent, an individual who

> is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning . . . must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 478-79. The only right in dispute here is the right to the presence of an attorney. The Supreme Court stated in *Miranda* that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . ." *Id*. at 471.

### 1. Petitioner's Statement to Detectives

About a year and a half after the crimes were committed, Petitioner was interviewed by two detectives. He was incarcerated in a state prison for another offense at the time. The detectives forgot to take their advice-of-rights form with them when they entered the prison, and they chose not to retrieve the form from their vehicle to avoid having to go through several security checkpoints in the prison a second time. Instead, one of the detectives wrote down the four constitutional rights enumerated in *Miranda,* and the other detective read those rights to Petitioner. The handwritten form read:

"1. You have a right to remain silent.

    2. Anything you say may be used against you.

    3. You have a right to a lawyer.

    4. If you cannot afford a lawyer one will be provided you free.

I understand what my rights are and am willing to talk."

Petitioner signed the handwritten form on March 20, 2000, and then informed the detectives that he had been drinking and smoking crack cocaine on the night of the crimes. He explained to the detectives that he wandered toward town and ended up in front of a house on Mason Street where he lived years earlier. Because he had no place to spend the night, he climbed up to the second floor, cut the screen with a knife, and gained entry through a bathroom window. He had anticipated that the place would be empty, but a man came out of a room with something in his hand and yelled at him. He felt unsafe and tussled with the man over an object in the man's hand. (Tr. June 26, 2000, at 253-54.)

Petitioner also informed the detectives that he must have had the knife in his hand, but he was not sure why. He claimed it was possible that he accidentally cut the man with the knife and also injured the woman who appeared and began to struggle with him. His intent was to escape the house and get away from those people. He eventually ran downstairs, exited the house, and threw the knife as far as he could. He did not intentionally stab or slash anyone. (*Id*. at 254.)

Petitioner's attorney did not move to suppress Petitioner's statement to the detectives, and Detective Richard Allen revealed the content of the statement to the jurors. Petitioner testified consistently with his statement to the detectives and claimed that he spoke with the detectives freely and voluntarily. (Tr. June 27, 2000, at 40-67.) However, he alleges that his

testimony was impelled by his statement to the police.

### 2. The Evidentiary Hearing and State Court Opinions

Petitioner first challenged his statement to the police on appeal from his convictions. The court of appeals then remanded his case for an evidentiary hearing. Petitioner's trial attorney, the two detectives who took Petitioner's statement, and a correctional officer who witnessed the interrogation testified at the hearing. The trial court subsequently issued a written opinion in which it concluded that the constitutional warnings read to Petitioner were adequate and that Petitioner was not "in custody" for purposes of *Miranda* in any event.

The Michigan Court of Appeals agreed with the trial court that Petitioner was not "in custody" for purposes of *Miranda*. The court of appeals concluded that, because *Miranda* warnings were not required, defense counsel was not ineffective for failing to move to suppress Petitioner's statement on the ground that he was not properly advised of his constitutional rights.

### 3. The "In Custody" Requirement

*Miranda* applies to "custodial interrogation," which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The Supreme Court's decision in *Mathis v. United States*, 391 U.S. 1 (1968), is instructive on the issue of whether *Miranda* warnings are required when the suspect is incarcerated. An Internal Revenue agent interviewed Mathis on federal charges while Mathis was serving a state sentence. At the subsequent federal trial, Mathis attempted to suppress his statement to the governmental agent on the ground that the agent had not read the *Miranda* warnings to him before

interrogating him. The District Court rejected this argument, and the Court of Appeals affirmed Mathis' convictions. The Supreme Court, however, held that *Miranda* called for reversal.

The Government maintained that *Miranda* warnings were unnecessary because Mathis was in custody on an entirely separate offense and was not placed in custody by the officer who questioned him. The Supreme Court, however, stated that this distinction was "too minor and shadowy to justify a departure from the well-considered conclusions of *Miranda* with reference to warnings to be given to a person held in custody." *Id* at 4. The Supreme Court found "nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Id*. at 4-5. Although some federal circuit courts have restricted *Mathis*, s*ee, e.g., Cervantes v. Walker*, 589 F.2d 424, 427 (9th Cir. 1978), this Court is bound by clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *King v. Trippett*, 192 F.3d 517, 523 n.2 (6th Cir. 1999). The Supreme Court determined in *Mathis* that the petitioner was "in custody" and entitled to *Miranda* warnings before a federal agent interrogated him about an offense unrelated to the one for which he was incarcerated.

The facts in this case are similar to the facts in *Mathis.* The Court therefore believes that Petitioner was in custody" for purposes of *Miranda* and was entitled to *Miranda* warnings. The decision of the Michigan Court of Appeals was contrary to *Mathis*. This conclusion does not resolve the issue, however, because the Michigan Court of Appeals also opined that the *Miranda* warnings were adequate.

### 4. The Adequacy of the Constitutional Warnings

Although Petitioner contends that he was not adequately advised of his constitutional

8

rights before being interrogated, the record indicates otherwise. Detective Richard Allen testified at the evidentiary hearing that he orally informed Petitioner of his right to have an attorney present during questioning. He allegedly explained to Petitioner that, if he wanted to wait for an attorney, the officers could wait and return when he had acquired one. Detective Allen further explained that the detectives would ensure that an attorney was available to represent him if he could not afford one. (Tr. May 31, 2001, at 54-55 and 60.)

Petitioner's appellate attorney pointed out at the hearing that, when the prosecutor asked Detective Allen at trial how he went about advising Petitioner of his *Miranda* rights, Allen had responded, "I just read them to him." (Tr. June 26, 2000, at 251.) Detective Allen asserted at the evidentiary hearing that he never merely reads the constitutional rights to a suspect. He claimed that he normally tells a suspect that he or she has a right to the presence of counsel during questioning. The trial court added that it was possible no one asked Detective Allen at trial whether he had elaborated on the constitutional rights when he read them to Petitioner. (Tr. May 31, 2001, at 57-60.) In fact, Detective Allen was not asked at trial whether he elaborated on the *Miranda* rights when reading them to Petitioner. (Tr. June 26, 2000, at 251-52.)

Petitioner nevertheless alleges that Detective Allen's testimony at the evidentiary hearing was not credible. Allen initially did not remember whether he testified at trial, and he was unable to remember other details about the case. In addition, Allen's police report did not reflect the fact that he had elaborated on the constitutional rights when reading them to Petitioner. (Tr. May 31, 2001, at 55-56 and 59.) However, the trial court found Detective Allen to be a credible witness, and a state court's resolution of credibility issues is entitled to special deference in a habeas proceeding. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). This is particularly true here

9

because there was no evidence contradicting Detective Allen's testimony. Correctional investigator Michael Engmark did not recall whether Detective Allen actually explained the *Miranda* rights or merely read them verbatim. Engmark nevertheless testified that Detective Allen went over the rights with Petitioner and asked him if he understood each right. (Tr. May 31, 2000, at 19 and 25-26.) Detective Timothy Gonzales testified that Detective Allen read and explained the *Miranda* warnings to Petitioner. (*Id*. at 42.) Petitioner was the only other person present during the interrogation, but he did not testify at the evidentiary hearing.

Petitioner has failed to carry his burden of rebutting the presumption that a state court's factual findings are presumed correct. 28 U.S.C. 2254(e)(1); *Rice v. Collins*, __ U.S.__, __, 126 S. Ct. 969, 974 (2006). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985). Consequently, the Court is required to defer to the trial court's conclusion that Detective Richard Allen was credible.

Detective Allen testified that he informed Petitioner of his right to have counsel present during questioning. Consequently, the state appellate court's conclusions that the constitutional warnings read to Petitioner were adequate and that Petitioner's attorney was not ineffective were objectively reasonable. The state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

### 5. Harmless Error Analysis

Even if Petitioner's statement to the police was involuntary and inadmissible at trial, harmless-error analysis applies to confessions. *Arizona v. Fulminante*, 499 U.S. 279, 295

(1991). Petitioner was detained a few blocks from the crime scene shortly after the crimes were committed. With the exception of the color of his shoes, his clothing matched the description provided by Chasity Bates, who was the eleven-year-old daughter of the victims. Officer William Mills took Chasity to the place where Petitioner was being detained. While still seated in the patrol car, Chasity said to Officer Mills, "That's him, that's him." Chasity identified Petitioner at trial as the man who had broken into her family's residence. (Tr. June 26, 2000, at 139-41.) In light of Chasity's identification testimony, the admission of Petitioner's statement to detectives arguably did not have had a "substantial and injurious effect or influence" on the jury's verdict, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), and was harmless.

### B. Zachary Bates' Comments to a Police Officer

Petitioner alleges next that Police Officer Wendy Starke's testimony concerning what the victims' young son (Zachary Bates) said to Officer Starke was inadmissible hearsay.[2] According to Petitioner, Zachary's comments established the element of intent to commit a larceny, which the prosecutor had to prove to show that Petitioner committed first-degree home-invasion, the underlying felony for the felony murder charge.[3] Petitioner also alleges that the hearsay violated

---

[2] Respondent argues that Petitioner procedurally defaulted this claim by raising it in a post-conviction motion after the Michigan Court of Appeals adjudicated and rejected the claim. The Court finds no merit in Petitioner's claim, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Consequently, the Court will address Petitioner's claim on the merits rather than perform a procedural default analysis.

[3] As explained by the trial court, to prove felony murder, the prosecutor had to prove that, when Petitioner caused the death of Martin Bates, he was committing or attempting to commit the crime of home invasion. The trial court explained the elements of home invasion as (1) breaking into a dwelling, (2) entering the dwelling, (3) with intent to commit larceny therein, and (4) while armed with a dangerous weapon or while another person was lawfully present in

his right to confront witnesses because Zachary did not testify at trial.  The trial court admitted the hearsay testimony under the "excited utterance" exception to the hearsay rule, and the Michigan Court of Appeals concluded that the trial court did not abuse its discretion by admitting the hearsay.

### 1.  The Alleged Violation of Michigan Rule of Evidence 803(2)

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, __ U.S. __, __, 126 S. Ct. 602, 604 (2005); *see also Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (stating that  "this Court 'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition").  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, 543 U.S. 892 (2004).  The Court has concluded for the following reasons that the admission of Officer Starke's hearsay testimony was not fundamentally unfair.

### 1.  Excited Utterances

The Michigan Rules of Evidence provide that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.  Mich. R. Evid. 803(2).  The Federal Rules of

---

the dwelling.  (Tr. June 27, 2000, at 119-20.)

Evidence include the same exception to the hearsay rule.  *See* Fed. R. Evid. 803(2).  When interpreting the federal "excited utterance" exception, the Sixth Circuit recently applied a three-factor test for determining whether a statement qualifies as an excited utterance:

> "First, there must be an event startling enough to cause nervous excitement."  *Haggins* [*v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983]. "Second, the statement must be made before there is time to contrive or misrepresent." 715 F.2d at 1057.  Finally, "the statement must be made while the person is under the stress of the excitement caused by the event." 715 F.2d at 1057.  More, generally, we ask whether the statements at issue were made "under circumstances *that eliminate the possibility of fabrication, coaching, or confabulation,* and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." [*United States v.*] *Schreane*, 331 F.3d [548, 563 (6th Cir. 2003)] (internal quotation marks and citation omitted) (emphasis in original).

*United States v. Hadley*, 431 F.3d 484, 496 (6th Cir. 2005), *petition for cert. filed*, (U.S. Apr. 14, 2006) (No. 05-10577).

The event in question here certainly qualifies as a startling event.  Zachary Bates informed Officer Starke that he woke up when a stranger was rummaging around his bedroom.  After the man left his bedroom, he thought that his parents threw something at the man because he heard glass breaking.  He thought that the man picked up a piece of broken glass and used it to stab his mother in the chest.  He also thought that the man swung the object at his father.  (Tr. June 26, 2000, at 220.)

The second factor was satisfied because Zachary's statements were made to Officer Starke at the crime scene shortly after the incident.  Several other officers were already present, and the children apparently had been moved from the porch to the sergeant's vehicle.  However, Zachary spoke to Officer Starke without any prompting on her part.  (*Id*. at 217-19.)  And although Officer William Mills had already gone upstairs, discovered the body of Martin Bates,

13

walked back downstairs, and approached the children, Officer Mills apparently focused on Zachary's older sister, Chasity, who was articulate and able to tell him what she knew and had observed. (*Id.* at 172-74.) Not enough time had elapsed for a young child to contrive or misrepresent the facts when Officer Starke subsequently approached Zachary.

Finally, the statements were made while Zachary was still under the stress of excitement caused by the event. Officer Starke testified that Zachary and his sister were upset and crying when she was asked to calm down the children. (*Id*. at 218.)

All three factors of the test for excited utterances were satisfied. Therefore, Zachary's statements to Officer Starke qualified as excited utterances, and the admission of Zachary Bates' statements to Officer Starke was not fundamentally unfair. Petitioner's constitutional right to due process was not violated by the admission of the hearsay testimony.

## 2. The Confrontation Clause

Petitioner alleges that Officer Starke's hearsay testimony about Zachary Bates' comments violated his constitutional right to confront witnesses. The Court must review this claim *de novo*, because no state court addressed Petitioner's constitutional claim. *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1032 (2006).

The Sixth Amendment right to confront witnesses applies to state court proceedings. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). It provides a criminal defendant with "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Although Zachary Bates did not testify at trial, the right to confront witnesses does not require "a face-to-face encounter at trial in *every*

instance in which testimony is admitted against a defendant. Instead, . . . the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990) (emphasis in original); *see also Idaho v. Wright*, 497 U.S. 805, 813 (1990) (noting that the Confrontation Clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant."

At the time of Petitioner's trial in June of 2000, the admissibility of out-of-court statements under the Confrontation Clause was governed by *Ohio v. Roberts*, 448 U.S. 56 (1980). The Supreme Court stated in *Roberts* that,

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66.[4]

---

[4] The Supreme Court stated in *Crawford v. Washington*, 541 U.S. 36, 61 (2004), that the Framers of the Constitution did not intend "to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" The Supreme Court held that --

> [w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

*Id.* at 68.

This Court need not apply *Crawford* here, because the AEDPA requires habeas courts to

Zachary Bates apparently was never listed as a witness. (Tr. June 26, 2000, at 6-7, 27.) Although the reason why he was not called as a witness is unclear from the record, Petitioner does not question Zachary's unavailability. He merely claims that the "excited utterance" exception to the hearsay rule did not apply, because Zachary gave a narrative statement, which was not spontaneous. The Court, however, has concluded that the "excited utterance" exception was applicable, and the Supreme Court has determined that the "excited utterance" exception to hearsay rules is a firmly rooted exception, which provides substantial guarantees of trustworthiness. *See White v. Illinois*, 502 U.S. 346, 355-56 and 355 n.8 (1992). "If [a] statement qualifies as an excited utterance, which necessarily means that it carries sufficient indicia of reliability and trustworthiness, then the judicial inquiry is at an end." *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003). "[A]n out-of-court statement that was properly admitted under this exception would not have run afoul of the Confrontation Clause, regardless of the availability of the declarant to testify at trial." *Hadley*, 431 F.3d at 493. Therefore, Petitioner's claim under the Confrontation Clause has no merit.

### C. The Amended Information

Petitioner's third and final claim alleges that the criminal information charging him with open murder and assault with intent to commit murder was improperly amended at trial to substitute felony murder for open murder. Petitioner further alleges that his trial attorney was ineffective for failing to object to the amendment. The Michigan Court of Appeals

---

view a petitioner's claims in light of Supreme Court holdings "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412. *Crawford* was not clearly established law before Petitioner's conviction before final, and it is not retroactive on habeas corpus review. *Dorchy v. Jones*, 398 783, 788 (6th Cir. 2005).

acknowledged the constitutional implications of amending the information and concluded that defense counsel was not ineffective for failing to challenge the felony-murder charge on procedural grounds.

### 1.  The State Law Claim

Whether the alleged amendment to the criminal information was proper under state law is not a basis for habeas relief, because "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )." *Estelle v. McGuire*, 502 U.S. at 68. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

### 2.  The Constitutional Claim

The constitutional question is whether the amendment violated Petitioner's right to notice of the charges. A defendant in a criminal case has a constitutional right to be reasonably informed of the charges against him so that he can prepare a defense. *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002) (citing *Russell v. United States*, 369 U.S. 749, 766-67 (1962)). "Fair notice is essential in criminal prosecutions . . . ." *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005). "Conviction upon a charge not made would be sheer denial of due process." *De Jonge v. Oregon*, 299 U.S. 353, 362 (1937); *see also Stirone v. United States*, 361 U.S. 212, 217 (1960) (stating that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him"). The constitutional right to be informed of the nature of the accusations "requires that the offense be charged with precision and certainty so as to apprise the accused of the crime of which he stands charged. Such

definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial." *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).

As noted above, Petitioner was charged with open murder and assault with intent to commit murder. Following a preliminary examination, he was bound over to circuit court for trial on the same charges. At the close of the State's proofs, he moved for a directed verdict of acquittal on both counts. He argued that the assault charge should be reduced to felonious assault and that the first-degree murder charge should be reduced to second-degree murder or manslaughter. He claimed that the prosecutor had not shown evidence of a premeditated murder and that the evidence was insufficient to support a charge of felony murder, because there was no evidence of intent to commit one of the felonies enumerated in the statute. (Tr. June 27, 2000, at 15-17.)

The trial court granted the motion as to premeditated murder after agreeing with defense counsel that the prosecutor had failed to show evidence of premeditation. The trial court denied the motion in all other respects, and the trial proceeded on a theory of felony murder and assault with intent to commit murder. (*Id*. at 19-24.)

In Michigan, a charge of open murder includes first-degree felony murder. *People v. McKinney*, 65 Mich. App. 131, 133-36; 237 N.W.2d 215, 217-18 (1975). Thus, when Petitioner was first accused of open murder, he was put on notice that he may have to defend against a charge of felony murder. His attorney apparently recognized this fact, for he stated during his motion for a directed verdict that he assumed the prosecutor was proceeding on a theory of felony murder because the prosecutor had failed to establish premeditated murder. (Tr. June 27, 2000, at 15.)

18

Petitioner was given notice of the felony-murder charge in the criminal information. Therefore, defense counsel's failure to argue that Petitioner was not bound over for trial on felony murder did not amount to deficient performance. Nor did the deficient performance prejudice the defense. *Strickland*, 466 U.S. at 687. The state appellate court's conclusion that defense was not ineffective did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*.

### 3. Sufficiency of the Evidence at the Preliminary Examination

Petitioner alleged in state court that the evidence presented at the preliminary examination was insufficient to bind him over on a charge of felony murder. To the extent that Petitioner is making the same argument here, his claim lacks merit. Petitioner had no constitutional right to a preliminary examination, *Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965), and this Court may not vacate a conviction "on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. at 119. In other words, when a defendant is ultimately convicted, he cannot upset his conviction on the basis that probable cause to commit the charged crime was not shown before trial. *United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986).

### IV. Conclusion

For all the foregoing reasons, the application for a writ of habeas corpus [Doc. #3, Oct. 6, 2004] is DENIED. The Court DECLINES to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.

                    s/Bernard A. Friedman  
                    BERNARD A. FRIEDMAN  
                    CHIEF UNITED STATES DISTRICT JUDGE

Dated:   July 26, 2006